```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

**GE Mobile Water, Inc.**

    **v.**                               Case No. 13-cv-357-PB
                                         Opinion No. 2014 DNH 049
**Red Desert Reclamation, LLC, et al.**


## MEMORANDUM AND ORDER

In February 2012, GE Mobile Water, Inc. entered into a contract with Red Desert Reclamation, LLC to lease water treatment equipment for use at Red Desert's Wyoming facility. After Red Desert failed to make payments required under the contract, GE Mobile sued it and two affiliated entities, Clean Runner, LLC and Cate Street Capital, Inc.

Red Desert has moved to dismiss the complaint for lack of personal jurisdiction.

## I. BACKGROUND[1]

Red Desert is a Wyoming limited liability company. In 2012, it operated a facility in Rawlins, Wyoming for recycling water used in the hydraulic fracturing of natural gas reserves.

---

[1] Unless otherwise specified, the facts are taken from the complaint. Doc. No. 1.

Red Desert used water treatment technology for its Wyoming facility developed by Clean Runner, a Delaware limited liability company.  Red Desert and Clean Runner are managed by Cate Street, a Delaware corporation with an office in Portsmouth, New Hampshire.  Cate Street planned to use the Wyoming facility as a platform to showcase Clean Runner's technology, with the goal of operating similar hydraulic fracturing water treatment facilities throughout the country.  Doc. Nos. 18-2, 18-4, 18-5, 18-6.

Beginning in September 2011, Steven Fischer, a GE Mobile employee, began working with Judson J. Cleveland on a proposed contract to lease water processing and treatment equipment for use at the Red Desert facility.  At the time, Cleveland was a Managing Director of Cate Street, Chief Operating Officer of Red Desert, and President of Clean Runner.  Barry Glichenhaus and Samuel Olson of Cate Street were also involved in negotiating and finalizing the contract.  When Fischer contacted his counterparts regarding the contract, he did so either at offices they maintained in their homes or at Cate Street's Portsmouth, New Hampshire office.

Negotiations culminated in a Proposal from GE Mobile and a $3.264 million Purchase Order from Red Desert.  The Purchase Order states that it was submitted by "Red Desert Reclamation,

2

LLC, One Cate Street, Suite 100, Portsmouth, NH 03801 USA." The "ship to" section of the Purchase Order lists the same address. Cleveland signed the Purchase Order on behalf of Red Desert on February 28, 2012. Under his signature, Cleveland wrote, "President, Clean Runner." The following day, a representative of GE Mobile accepted the Purchase Order by signing it and the Proposal.

GE Mobile delivered equipment to the Wyoming facility in April 2012 and subsequently sent several invoices to Red Desert at the Portsmouth, New Hampshire address. In August 2012, Cleveland emailed Fischer a proposal to address Red Desert's failure to make any of the payments required under the contract. Cleveland's email identified him as "Judson C. Cleveland/President/CEO/Clean Runner, Inc., One Cate Street, Portsmouth, NH 03801-7108." Approximately one week later, GE Mobile received a check from Red Desert for $20,000. The check was drawn on an account that listed the account holder as "Red Desert Reclamation, LLC/1 Cate Street, Suite 100, Portsmouth, NH 03801."

GE Mobile received no further payments, and the parties ultimately agreed to close the Wyoming facility. After giving notice, GE Mobile removed its equipment and technicians from the site in early October 2012.

On February 27, 2013, GE Mobile received a letter from Clean Runner on Red Desert letterhead. The letter listed Red Desert's address as One Cate Street, Portsmouth, New Hampshire, and stated that both Clean Runner and Red Desert were beginning the process of winding down operations. Doc. No. 18-11. The letter offered Clean Runner's and Red Desert's creditors a global settlement of $300,000 on an acknowledged debt of $1.147 million.

## II.  PERSONAL JURISDICTION

### A.  Standard of Review

In objecting to a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish that personal jurisdiction exists. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). Because I have not held a hearing on the motion, GE Mobile must make a prima facie showing that this court has personal jurisdiction. See Cossaboon v. Me. Med. Ctr., 600 F.3d. 25, 31 (1st Cir. 2010). A prima facie showing requires the plaintiff to "proffer[] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Lechoslaw v. Bank of Am., N.A., 618 F.3d 49, 54 (1st Cir. 2010) (internal quotation marks omitted); see also Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26

(1st Cir. 2008) (a plaintiff asserting jurisdiction cannot rest upon the pleadings but is "obliged to adduce evidence of specific facts"). I consider GE Mobile's assertions to the extent they are supported by the evidence of specific facts set forth in the record, and I consider the facts offered by Red Desert "to the extent that they are uncontradicted." See Cossaboon, 600 F.3d at 31 (internal quotation marks omitted). I construe the facts "in the light most congenial to the plaintiff's jurisdictional claim." Hannon v. Beard, 524 F.3d 275, 279 (1st Cir. 2008). Despite this liberality, I will not "credit conclusory allegations or draw farfetched inferences." Negron-Torres v. Verizon Commc'ns, Inc., 478 F.3d 19, 23 (1st Cir. 2007).

**B.  Analysis**

Whether a court has personal jurisdiction in a diversity action over a nonresident defendant depends on whether both the forum state's long-arm statute and the due process requirements of the United States Constitution are satisfied. Cossaboon, 600 F.3d at 29 n.1. New Hampshire's long-arm statute permits a court to exercise personal jurisdiction over a defendant to the extent allowed by due process. Hemenway v. Hemenway, 159 N.H. 680, 685 (2010). I thus turn to the constitutional analysis, which requires "sufficient minimum contacts with the state, such

5

that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir. 2007) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

A court may exercise either general or specific personal jurisdiction depending on the nature of the defendant's contacts with the forum state. Carreras v. PMG Collins, LLC, 660 F.3d 549, 552 (1st Cir. 2011). At issue here is specific jurisdiction, which "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Cossaboon, 600 F.3d at 31.

The Supreme Court has recognized that a court can acquire specific personal jurisdiction over a principal based on the actions of an agent. Daimler AG v. Bauman, 134 S.Ct. 746, 754 (2014). Further, both this Court and the First Circuit have consistently found that "[u]nder basic principles of agency law, forum-related contacts made by an agent acting within the scope of an agency relationship are attributable to the principal." 25 CP, LLC v. Firstenberg Mach. Co., 2009 DNH 185, 26-27 (citing Dagesse v. Plant Hotel N.V., 113 F.Supp.2d 211, 216 n.2 (D.N.H. 2000)). See also Sawtelle v. Farrell, 70 F.3d 1381, 1389, n. 4 (1st Cir. 1995); Daynard v. Ness, Motley, Loadholt, Richardson &

6

Poole, P.A., 290 F.3d 42, 55 (1st Cir. 2002).

I determine whether the court has sufficient "minimum contacts" with the forum state to support a finding of specific personal jurisdiction by considering three factors: relatedness, purposeful availment, and reasonableness.  See Adelson, 510 F.3d at 49.

1.  Relatedness

The relatedness inquiry requires that "the underlying claim 'arise out of' or be 'related to' the activities within the forum state."  Id.  Relatedness is a "flexible, relaxed standard which focuses on the nexus between the defendant's contacts and the plaintiff's cause of action."  Id. (internal citations and quotation marks omitted).

The claims against Red Desert are primarily contractual in nature.  "[I]n contract claims, we may look to and draw inferences from 'the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'"  Id. (citing Daynard, 290 F.3d at 52); see Bluetarp Fin., Inc. v. Matrix Constr. Co, Inc., 709 F.3d 72, 80 (1st Cir. 2013). "Furthermore, where the cause of action is for an alleged breach of contract, we ask whether the defendant's activity in the forum state was 'instrumental either in the formation of the

7

contract or its breach.'" Adelson, 510 F.3d at 49 (internal citations omitted).

GE Mobile has submitted evidence to support its contention that its contract negotiations with Red Desert's agents occurred in New Hampshire.  This evidence includes emails about the contract with Portsmouth, New Hampshire addresses in the signature lines as well as affidavits attesting that GE Mobile officials contacted Red Desert's representatives regarding the proposed contract either at their home offices or at Cate Street's office in Portsmouth, New Hampshire.  Doc. Nos. 1-2, 18-7.

The contract itself also explicitly links Red Desert to New Hampshire.  The contract contains two sections, a Proposal sent by GE Mobile and a Purchase Order sent by Red Desert.  In the Proposal, GE Mobile listed Rawlins, Wyoming as Red Desert's location, with no mention of New Hampshire.  In the Purchase Order, however, Red Desert listed a New Hampshire address in both the "Ordered By" and "Ship to" sections.  The phone and fax numbers listed on the Purchase Order have New Hampshire area codes.  In entering the contract, Red Desert was making its ties to New Hampshire clear.  This made it reasonable for GE Mobile and Red Desert to believe that the intended future consequences of the contract would require relations between the parties in

New Hampshire.

The parties' course of dealing after signing the contract also evidences their relationship with New Hampshire. Red Desert argues that the scope of GE Mobile's actual performance was limited to delivering goods and services in Wyoming, and that its occasional contacts with agents in New Hampshire are insufficient to establish minimum contacts. This argument, however, ignores a considerable body of contradictory evidence. Red Desert characterizes GE Mobile's act of mailing invoices to Red Desert's address in New Hampshire as a unilateral action, yet GE Mobile sent these invoices to Red Desert's New Hampshire address because the contract provided that the invoices were to be sent to that address. Moreover, the sole payment that Red Desert made on the contract was made via a Red Desert corporate check issued from its Portsmouth, New Hampshire address. Doc. No. 18-10. GE Mobile has also submitted correspondence received on Red Desert letterhead with a Portsmouth, New Hampshire address and presented evidence in the form of emails from Red Desert and Cate Street employees with New Hampshire addresses in the signature lines. Doc. Nos. 1-4, 1-5. GE Mobile further alleges by sworn affidavit that it engaged in telephone conversations concerning late payments with Red Desert and Cate Street employees located in New Hampshire.

The First Circuit found specific jurisdiction lacking when the only contacts between a defendant and forum state involved the defendant mailing a previously negotiated contract to the forum state for a signature, followed by three emails to sort out final logistics. Phillips, 530 F.3d at 29. This case is more analogous, however, to the First Circuit's recent decision in Bluetarp. See 709 F.3d at 80. As in Bluetarp, negotiations and formation of the contract between GE Mobile and Red Desert occurred in part in the forum state, and "the resulting relationship contemplated the future consequences of [defendants] . . . continuing to interact with [GE Mobile] in [the forum state]." See id. "[A]s evidenced by the billing statements and phone and email communications between the parties, just such interplay did take place." Id. GE Mobile's claim unequivocally relates to Red Desert's activities within New Hampshire.

2. Purposeful Availment

The purposeful availment requirement ensures that jurisdiction is "not based on merely 'random, isolated or fortuitous' contacts with the forum state." Adelson, 510 F.3d at 50 (citing Sawtelle, 70 F.3d at 1391. Courts focus on whether the defendant's actions are voluntary and the assertion of jurisdiction over the defendant is foreseeable. See Burger

10

King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (defendant's actions are voluntary when they are unilateral); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (assertion of jurisdiction is foreseeable when the defendant's actions are sufficient for him or her to "reasonably anticipate being haled into court there").  By invoking the benefits and protections of a state's laws, a defendant makes its presence before the state's courts foreseeable.  Daynard, 290 F.3d at 60.

   Red Desert's contacts with New Hampshire were unquestionably voluntary: it listed a New Hampshire address on the Purchase Order, corresponded with GE Mobile using letterhead listing a New Hampshire address, and listed New Hampshire telephone and fax numbers in its contact information.  It "managed" its business out of New Hampshire.  The sheer abundance of representations acknowledge an ongoing relationship with New Hampshire that establishes the foreseeability of litigation within the state.  See Adelson, 510 F.3d at 50.

   Moreover, GE Mobile has submitted additional public records showing that Red Desert considered its Portsmouth, New Hampshire address to be a forum from which it conducted its business.  Red Desert listed Portsmouth, New Hampshire as its "principal address" on its official corporate filing with the State of Wyoming.  It also included its Portsmouth, New Hampshire address

11

on its radio license, its State of Wyoming environmental permits, and other public filings.  Doc. Nos. 18-3, 18-13, 18-14.  In publically holding itself to be a corporation with its primary address in New Hampshire, Red Desert freely and of its own volition represented its strong New Hampshire contacts to the entire world.  See Adelson, 510 F.3d at 50; Carreras, 660 F.3d at 555 ("when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior").  These voluntary actions make it foreseeable – even expected – that Red Desert could be haled into court in New Hampshire in the event of a contract dispute.

    3.   Reasonableness

Even if a court finds that the relatedness and purposeful availment requirements are met, specific personal jurisdiction may nevertheless only be exercised if it is reasonable for the court to do so.  Factors that courts consider in assessing reasonableness include (1) the defendant's burden of appearing in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution; and (5) the common interests of all sovereigns in promoting substantive

12

social policies. Adelson, 510 F.3d at 51 (citing Burger King, 471 U.S. at 477).

A consideration of these factors indicates that it is reasonable to exercise specific personal jurisdiction here. Red Desert would have no significant burden in appearing in New Hampshire. Cleveland, its President, is a managing director at Cate Street, with offices based in New Hampshire. The company represented that its "managers" worked from Cate Street's New Hampshire offices.

GE Mobile also has a significant interest in bringing suit against Red Desert in New Hampshire because it is suing Cate Street and Clean Runner here based on the same contractual relationship. It would thus be convenient and efficient for GE Mobile to present its claims against Red Desert in this jurisdiction. Similarly, litigating the dispute in one forum would be most convenient for the judicial system to come to an effective and efficient resolution.

The other factors - New Hampshire's interest in adjudicating the dispute and the common interests of sovereigns in promoting substantive social policies – are of negligible import given the weight of the first three factors, which all favor exercising jurisdiction here. Accordingly, Red Desert's contract-related contacts with New Hampshire in this case

13

constitute sufficient "minimum contacts" so as not to "offend traditional notions of fair play and substantial justice." See Adelson, 510 F.3d at 52 (quoting Int'l Shoe, 326 U.S. at 316).

### III. CONCLUSION

For the reasons discussed above, I deny Red Desert's motion to dismiss for lack of personal jurisdiction. Doc. No. 15.[2]

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 7, 2014

cc:  Danielle Andrews Long, Esq.
     Scott H. Harris, Esq.

---

[2] Clean Runner and Cate Street have moved to dismiss the claims brought against them on different grounds. I will address their arguments in a separate order.

14