**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**GE Mobile Water, Inc.**</u>

    **v.**

<u>**Red Desert Reclamation, LLC, et al.**</u>

Case No. 13-cv-357-PB
Opinion No. 2014 DNH 054

<u>**MEMORANDUM AND ORDER**</u>

In February 2012, GE Mobile Water, Inc. entered into a contract with Red Desert Reclamation, LLC to lease water treatment equipment for use at its Wyoming facility.  After Red Desert failed to make payments required under the contract, GE Mobile sued it and two affiliated entities, Clean Runner, LLC and Cate Street Capital, Inc.  In an earlier order, I denied Red Desert's motion to dismiss for lack of personal jurisdiction. GE Mobile Water, Inc. v. Red Desert Reclamation, LLC, 2014 DNH 049, 14.  I now consider Clean Runner and Cate Street's motion to dismiss for failure to state a claim.

## I.  <u>BACKGROUND</u>[1]

In 2012, Red Desert operated a facility in Rawlins, Wyoming for recycling water used in the hydraulic fracturing of natural gas reserves.  Red Desert used water treatment technology at its Wyoming facility that was developed by Clean Runner.  Red Desert and Clean Runner are managed by Cate Street Capital, Inc., a Delaware corporation with an office in Portsmouth, New Hampshire.  Cate Street planned to use the Wyoming facility as a platform to showcase Clean Runner's technology, with the goal of operating similar hydraulic fracturing water treatment facilities throughout the country.  Doc. Nos. 18-2, 18-4, 18-5, 18-6.

Beginning in September 2011, Steven Fischer, a GE Mobile employee, began working with Judson J. Cleveland on a proposed contract under which GE Mobile would lease water processing and treatment equipment for use at the Red Desert facility.  At the time, Cleveland was a Managing Director of Cate Street, Chief Operating Officer of Red Desert, and President of Clean Runner. Barry Glichenhaus and Samuel Olson of Cate Street were also

---

[1] Unless otherwise specified, the facts are taken from the complaint.  Doc. No. 1.

involved in negotiating the contract.  During negotiations, Cate Street's representative told Fischer that Cate Street was paying for the project and was the ultimate decision maker.  Cleveland also represented "that Cate Street, being funded with $40 million for the Project, would be able 'to make good' on the invoices issued by [GE Mobile] for the Project."

Negotiations culminated in a Proposal from GE Mobile and a $3.264 million Purchase Order from Red Desert (collectively the "Contract").  Cleveland signed the Purchase Order on behalf of Red Desert on February 28, 2012.  Under his signature, Cleveland wrote, "President, Clean Runner."  Cleveland similarly signed the Proposal, writing "For: Red Desert Reclamation" by "Judson Cleveland, President, Clean Runner."  Doc. No. 1-1.  A representative of GE Mobile accepted the Purchase Order by signing it and the Proposal the next day.

The Contract includes an integration clause, a no oral modification clause, and a choice of law clause.  The integration clause states: "The parties intend this Agreement, with any attached Exhibits and Addenda, as a final expression of their agreement and a complete and exclusive statement of its terms."  It provides that "no representations . . . have been

made" other than those "expressly set forth," and notes that the
parties' course of previous dealings, usage, or trade shall be
inadmissible in any judicial proceeding.  The no oral
modification clause provides that any modifications to the
Contract must be reduced to writing and signed by the parties.
The choice of law clause specifies that the Contract is governed
by Virginia law.  Doc. No. 1-1.

Pursuant to the Contract, GE Mobile delivered equipment to
Red Desert's Wyoming facility in April 2012.  GE Mobile
subsequently sent several invoices to Red Desert at Cate
Street's Portsmouth, New Hampshire address, the address
specified in the Purchase Order.  In August 2012, Cleveland
emailed Fischer a proposal to address Red Desert's failure to
make payments required under the Contract.  Cleveland asked
Fischer in the email:  "[i]f I can get CSC to cut you a check
for $100K on Monday to be applied to RO Invoices will that help
you?"  Doc. No. 1-4.  Cleveland's email identifies him as
"Judson J Cleveland/President/CEO/Clean Runner, Inc., One Cate
Street, Portsmouth, NH 03801-7108."  Approximately one week
later, GE Mobile received a check from Red Desert for $20,000.
The check was drawn on an account that listed the account holder

as "Red Desert Reclamation, LLC/ 1 Cate Street, Suite 100, Portsmouth, NH 03801."  Doc. No. 18-10.

On September 4, 2012, representatives of GE Mobile and Cate Street met at Cate Street's offices to discuss the status of outstanding payments on the Contract.  In attendance were Cate Street's president/CEO, its compliance director, and GE Mobile's North American sales director.  GE Mobile warned Red Desert that its failure to make additional required payments risked a shutdown of operations.  Cate Street's president acknowledged that Red Desert could not currently pay its invoices, but he assured GE Mobile that Cate Street was finishing work on a $1 million contract and would be able to pay once the contract was satisfied.  He further explained that Cate Street would have to recapitalize Red Desert and that it planned on doing so by going "to its investors to obtain more money to pay off Red Desert's debts, including the amount owed to GE."  Doc. Nos. 18, 18-9.

Discussions between GE Mobile and Cate Street continued in the ensuing weeks over telephone and email.  GE Mobile agreed to adjust the balance due under the Contract, giving Red Desert a credit of $172,050 to account for technologies that were not utilized at the facility.  On September 20, 2012, Cate Street

5

confirmed by phone its "continued interest in keeping the
Project operational."  Doc. No. 18.  The next day, Cate Street's
president emailed GE Mobile, stating "I want[] to reiterate our
position and confirm Red Desert Reclamation, LLC's commitment to
its vendors."  Doc. No. 1-5.  He acknowledged that Cate Street
would have to make a serious decision regarding whether to close
the facility, but "[w]hether we close the facility or keep it
open Red Desert will pay its bills to GE."  On October 1, 2012,
GE Mobile emailed Cate Street's president, saying "[a]s I
understand, it is your intent to shut down the facility and move
forward with resolving all outstanding commitments."  Doc. No.
1-5.

GE Mobile received no further payments, and the parties
agreed to shut down the project.  After giving notice, GE Mobile
removed its equipment and technicians in early October 2012.
The removal coincided with the closing of operations for the
winter, so GE Mobile's actions did not compromise production at
the site.  Up to that point, GE Mobile had provided everything
contractually required of it and was owed $996,000.

On October 16, 2012, GE Mobile emailed Cate Street's
president to again request his assistance in expediting

payments.  The email outlined the September conversations between the two companies and noted that Red Desert planned to close its books by October 15 and pay GE Mobile by November 15. It proposed a payment schedule and expressed "concern[] about the continued delay in payment, and diminution of clear communication between us."  On October 26, 2012, Cleveland stated in a telephone call with a GE Mobile official that he was "confident" that Cate Street would come through for GE Mobile and explained that Cate Street was raising equity to pay its outstanding invoices.  Doc. No. 18-8.

On February 27, 2013, GE Mobile received a letter from Clean Runner on Red Desert letterhead.  The letter stated that Red Desert's recycling site was closed and that both Clean Runner and Red Desert were beginning the process of winding down their operations.  Doc. No. 18-11.  The letter offered Clean Runner and Red Desert's creditors a global settlement of $300,000 on an acknowledged debt of $1.147 million.  A proposed settlement agreement attached to the letter identified both companies as the "debtor" to the project.

## II.  <u>STANDARD OF REVIEW</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citations omitted).

In deciding a motion to dismiss, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  Second, I credit as true all non-conclusory

factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Generally, under Rule 12(b)(6) I may properly consider "only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered," then I must convert it to a motion for summary judgment.  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d, 10, 15 (1st Cir. 2009) (citing Fed. R. Civ. P. 12(d)).  The First Circuit recognizes an exception to this rule allowing consideration of "documents the authenticity of which are not disputed by the parties; [] official public records; [] documents central to plaintiff's claim; [and] documents sufficiently referred to in

the complaint" in a motion to dismiss for failure to state a claim.  Id. (citing Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

### III. ANALYSIS

GE Mobile claims that Red Desert and Clean Runner are liable for breach of contract and breach of the implied contractual duty of good faith and fair dealing (Counts I-IV). It argues that all three defendants are liable on an unjust enrichment theory (Count V).  It also contends that Cate Street is liable for negligent misrepresentation and promissory estoppel (Counts VI and VII).  Finally, it argues that it is entitled to pierce the corporate veil and hold Cate Street liable for Red Desert's alleged failure to fulfill its obligations under the Contract (Count VIII).  Red Desert does not challenge the viability of GE Mobile's claims against it. Thus, I begin by considering GE Mobile's contract claims against Clean Runner.

### A.   Contract Claims

GE Mobile claims that Clean Runner can be held liable for breach of contract and breach of the implied contractual duty of

good faith and fair dealing because Cleveland signed the Contract in his capacity as President of Clean Runner.

New Hampshire and Virginia both follow section 328 of the Restatement (Second) of Agency, which provides that "[a]n agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has power so to bind, does not thereby become liable for its nonperformance." See Mbahaba v. Morgan, 163 N.H. 561, 566 (N.H. 2012); accord Terry Phillips Sales, Inc. v. SunTrust Bank, No. 3:13-CV-468, 2014 WL 670838, at *7 (E.D. Va. Feb. 20, 2014); Berman v. Grossman, No. 1:09-cv-211, 2009 WL 4110258, at *6 (E.D. Va. Nov. 24, 2009) (citing Restatement (Second) of Agency § 320 (1958)).[2] Relying on this basic legal principal, Clean Runner argues that it cannot be held liable on a breach of contract claim because the contract documents clearly provide that Cleveland, Clean Runner's president, signed the Contract as an agent for Red Desert.

GE Mobile presents two responsive arguments, neither of

---

[2] The cite both New Hampshire and Virginia law and they have not made a serious attempt to analyze the choice of law issues that the case presents. Nor has either party claimed that its argument on any issue depends upon how choice of law questions are resolved. Accordingly, I analyze the motion under New Hampshire law without conducting a choice of law analysis.

which is persuasive.  First, it acknowledges that Cleveland signed the Contract on behalf of Red Desert, a disclosed principal, but it argues that this case qualifies under an exception to the general rule of non-liability because Clean Runner stood to benefit from the Contract even though it signed only as an agent.  Although I recognize that an agent can be held liable on a contract with its principal if the agent manifests an intention to also be bound by the contract, see McCarthy v. Azure, 22 F.3d 351, 361-62 (1st Cir. 1994) (citing Restatement (Second) of Agency § 328 (1958)), the mere fact that the agent might somehow benefit from the contract is not sufficient, standing alone, to establish such an intention.  In this case, the Contract plainly was intended to bind only GE Mobile and Red Desert.  No other relevant facts are pleaded to support the contract claims against Clean Runner.  GE Mobile's assertion that Clean Runner stood to benefit from the Contract thus is not sufficient to support a contract claim against it.

GE Mobile also argues that Clean Runner must have bound itself to the Contract because it later joined with Red Desert in a proposed settlement agreement that listed both Red Desert and Clean Runner as the "debtor."  The short answer to this

argument is that GE Mobile cannot rely on the proposed
settlement agreement because a party may not rely on settlement
proposals to prove a disputed claim.  Fed. R. Evid. 408(a)(1);
Powell v. F. Acquisition, LLC, No. 2:12-cv-305, 2012 WL 6930437,
at *3 (E.D. Va. Feb. 15, 2012).  Accordingly, I dismiss GE
Mobile's breach of contract claims against Clean Runner.

**B.**   **Unjust Enrichment**

GE Mobile next argues that Red Desert, Clean Runner, and
Cate Street "have all been unjustly enriched at GE's expense."
The defendants note that unjust enrichment is "narrower, more
predictable, and more objectively determined" than the words
"unjust enrichment" connote, and that the remedy is only
available "where an individual receives 'a benefit which would
be unconscionable for him to retain.'"  Clapp v. Goffstown Sch.
Dist., 159 N.H. 206, 210 (2009) (quoting Kowalski v. Cedars of
Portsmouth Condo. Ass'n, 146 N.H. 130, 133 (2001)).
Accordingly, they move to dismiss the unjust enrichment claim by
arguing that GE Mobile has failed to sufficiently allege that it
ever received such a benefit.  They are correct.

GE Mobile's complaint contains little more than conclusory
assertions that either Clean Runner or Cate Street was unjustly

enriched.  The complaint does not claim that GE Mobile's work on
Red Desert's behalf resulted in any benefit to Cate Street.
Rather, the complaint indicates that the project failed – that
Cate Street likely lost money on the project, and that Clean
Runner went out of business.

GE Mobile's opposition memorandum provides more ample
support for its claim, alleging that Cate Street and Clean
Runner aimed to use the site as a platform to showcase
technology with an eye toward expanding their recycling efforts
nationwide.  Although increased visibility and an advertising
platform could benefit Cate Street and Clean Runner, GE Mobile
has nevertheless failed to sufficiently allege that either
defendant ever realized any benefit from the project.  Rather,
the complaint suggests that Cate Street and Clean Runner's pilot
platform failed, and the latter corporation was forced to wind
up its business operations.  Even in a best case scenario, these
facts could not support a claim that either defendant received a
benefit that would be unconscionable for it to retain.

I thus deny GE Mobile's unjust enrichment claims, not
because it has not alleged wrongdoing by Cate Street or Clean
Runner, but simply because the alleged wrongdoing did not result

in an unconscionable benefit to the defendants.

C.   **Negligent Misrepresentation**

GE Mobile bases its negligent misrepresentation claim on three representations: (1) prior to entering the Contract, Cleveland "represented to GE that Cate Street, being funded with $40 million for the Project, would be able 'to make good' on the invoices issued by GE for the Project;" (2) on August 3, 2012, Cleveland emailed Fischer, stating, in pertinent part, "[i]f I can get CSC to cut you a check for $100k on Monday to be applied to RO Invoices will that help you?"; and (3) at the September 4, 2012 meeting, Cate Street informed GE Mobile that it lacked sufficient funding, but "was finishing a $1 million job for a large customer and that receipt of funds from this job would allow Cate Street to pay the amount owed under the Contract." Doc. Nos. 1, 1-4.

All three of the statements GE Mobile cites are statements of intention.[3]  While such statements can support a fraud claim if they are false when made, they cannot serve as the basis for

---

[3]   Although the statements also contain representations of present or historic fact, GE Mobile does not assert that any of Cate Street's statements of fact were false.  Rather, it bases its claim on Cate Street's failure to act in accordance with its stated intentions.

15

a negligent misrepresentation claim because honestly held statements of intention are not false or misleading when made even if the speaker later fails to act in accordance with the stated intention. Alpine Bank v. Hubbell, 555 F.3d 1097, 1107 (10th Cir. 2009); see also Daley v. Blood, 121 N.H. 256, 257 (N.H. 1981) (rejecting negligent misrepresentation claim on Statute of Frauds grounds); J.G.M.C.J. Corp. v. C.L.A.S.S., Inc., 155 N.H. 452, 464 (2007) (same).  Because GE Mobile does not allege that Cate Street's statements of intention were false when made, its misrepresentation claim must be dismissed.

**D.   Promissory Estoppel**

GE Mobile asserts a claim against Cate Street based on promissory estoppel, arguing that (1) Cate Street represented that it would pay Red Desert's invoices; (2) GE Mobile reasonably relied upon Cate Street's representations; (3) its reliance was foreseeable; and (4) GE Mobile was thereby injured. A successful promissory estoppel claim in New Hampshire must allege "a promise reasonably understood as intended to induce action[, ] enforceable by one who relies on it to his detriment or to the benefit of the promisor." Rockwood v. SKF USA Inc., 758 F. Supp. 2d 44, 57 (2010) (citing Panto v. Moore Bus. Forms,

16

Inc., 130 N.H. 730, 738 (1988)).  Here, GE Mobile has
unquestionably alleged that Cate Street made several promises
both during contract negotiations and later, after the contract
was signed, to address GE Mobile's concerns with Red Desert's
failure to make payments.  It has submitted evidence that Cate
Street's promises were intended to induce GE Mobile to continue
working on the project, and it has alleged that it relied on
these promises in entering the Contract and continuing to
perform in the face of nonpayment.  Finally, it asserts that its
reliance was reasonable, and that it was harmed.

Cate Street nevertheless contends that the Statute of
Frauds bars GE Mobile's promissory estoppel claims.  Promissory
estoppel, however, is not premised upon the existence of a
contract, but rather upon the alternative theory that, even if
there was no contract, the plaintiff was induced to rely on the
defendant's non-contractual  promises.  See Embree v. Bank of
N.Y. Mellon, 2013 DNH 169, 15-16; Deutsche Bank Nat. Trust Co.
v. Fadili, No. 09-cv-385-LM, 2011 WL 4703707, at *16 (D.N.H.
Oct. 4, 2011)(noting that promissory estoppel is appropriate
only in the absence of an express agreement on the subject
between parties).  In Embree, the court cited the Restatement

17

(Second) of Contracts, "upon which the New Hampshire Supreme Court relies with regularity," as addressing a defendant's argument that a promissory estoppel claim was barred by the statute of limitations:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise.  The remedy granted for breach is to be limited as justice requires.

Embree, 2013 DNH at 15 (citing Restatement (Second) of Contracts § 139(1) (1981)).  Accepting GE Mobile's allegations as true, it has successfully pleaded that "injustice can be avoided only by enforcement of" the defendant's alleged promises.  See id.  I thus deny Cate Street's motion to dismiss the promissory estoppel claim.

**E.   Piercing the Corporate Veil**

GE Mobile also seeks to pierce the corporate veil and hold Cate Street liable for Red Desert's alleged failure to fulfill its obligations under the Contract.[4]  Cate Street argues in

---

[4]  I follow the practice employed by the New Hampshire Supreme Court in Mbahaba, 163 N.H. at 568, and assume without deciding that the members and managers of a limited liability corporation may be held liable on a veil-piercing theory in an appropriate case.  In making this assumption, I express no view as to

response that it cannot be held liable on a veil-piercing theory because GE Mobile has failed to allege sufficient facts to support its argument that the corporate veil should be pierced.

Courts have considered a variety of factors in determining whether the corporate veil should be pierced including:  whether the corporation has been insufficiently capitalized, see Terren v. Butler, 134 N.H. 635, 641 (1991); whether the corporation has misled others as to its corporate assets, Vill. Press, Inc. v. Stephen Edward Co., Inc., 120 N.H. 469, 472 (1980); whether the corporate assets have been intermingled, Zimmerman v. Puccio, 613 F.3d 60, 74 (1st Cir. 2010) (applying Massachusetts law); and whether corporate formalities have been observed, see Mbahaba, 163 N.H. at 569.  In this case, GE Mobile has pleaded sufficient facts to state a viable veil-piercing claim.

GE Mobile alleges that Cate Street is the "parent corporation" of Red Desert, that all three companies operate out of the same business address, and that Cate Street's officers hold titles with both Clean Runner and Red Desert.  Moreover, it maintains that Cate Street offered to pay at least a portion of

whether the veil-piercing test that applies to limited liability corporations differs from the test that is used to pierce the corporate veil for a traditional corporation.

Red Desert's debt, permitting an inference of the intermingling of corporate funds.  Cate Street officers' primary role in negotiating the Contract and managing GE Mobile's concerns over Red Desert's performance permits an inference that Cate Street in fact controlled the project and was using Red Desert's corporate form to not only insulate itself from liability but to commit an injustice.  This inference is supported by GE Mobile's allegations that Red Desert was severely undercapitalized.

Cate Street contends that GE Mobile has not pleaded sufficient facts in the complaint to support its allegation of under-capitalization.  I disagree, finding the facts alleged support an inference that Red Desert was provided with insufficient assets from the outset to meet its expected debts. See Terren, 134 N.H. at 641.  GE Mobile's pleadings describe Red Desert winding up operations after six months, not even one-third of the way through a $3.2 million contract.  They allege that Red Desert paid only $20,000 on nearly $1 million owed and relied on its manager's repeated promises that it would indeed make good on past due invoices.[5]  They also allege that Cate

---

[5] In opposing the motion to dismiss, Cate Street submits an affidavit stating that during the September 4, 2012 meeting, Cate Street's president confessed that Cate Street would have to

Street represented that the project was funded with $40 million in investments, permitting an inference that it misled GE Mobile into believing that the project would be adequately capitalized. See Vill. Press, 120 N.H. at 472.

GE Mobile has alleged sufficient facts to show that Cate Street and Red Desert bent the rules regarding corporate formalities and failed to adequately capitalize Red Desert so as to cover its prospective debts.  It has also sufficiently alleged that these actions were undertaken to promote an injustice on Red Desert's creditors.  I thus deny Cate Street's motion to dismiss GE Mobile's veil-piercing claim.

## IV.   CONCLUSION

For the reasons set forth above, I grant defendants' motion to dismiss (Doc. No. 15) as it pertains to the contractual claims against Clean Runner (Counts II and IV), the claim for unjust enrichment against Clean Runner and Cate Street (Count

---

recapitalize Red Desert in order to have funds to keep the Project going, and that Cate Street would "go to its investors to obtain more money to pay off Red Desert's debts."  Doc. Nos. 18, 18-9.   This affidavit may be beyond consideration at this stage of the proceedings, but I need not consider it because GE Mobile alleges sufficient additional evidence that Red Desert was undercapitalized.

V), and the claim for negligent misrepresentation against Cate

Street (Count VI).  I deny the motion in all other respects.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


March 17, 2014

cc:  Danielle Andrews Long, Esq.
     Scott H. Harris, Esq.